United States Court of Appeals for the 11th Circuit. Hear ye, hear ye, hear ye. The United States Court of Appeals for the 11th Circuit is now open according to law. God save the United States and this honorable court. Good morning. Good morning. We have four appeals to hear this morning. Counsel, we're familiar with your cases. We've read your briefs. The authorities cited in your briefs at least portions of the record. You have limited time this morning, so feel free to go straight to the heart of your argument without trying to educate us about the background we know about your case and try to make the key points that you feel we need to understand this morning. If you're not able to address something, of course, anything that's been raised in your written briefs is still preserved. Do be mindful of the time. You can see the clock as well as me. I won't be giving you a warning. When the clock expires, it's time to wrap it up. If you're answering a question from the court, of course, feel free to finish your answer, but do be mindful of our time. You won't lose any time you've reserved for rebuttal should that occur and should you have rebuttal time. We'll begin this morning with Islam versus the Secretary of the Department of Homeland Security. Ms. Gruken. Yes, Your Honor. May it please the court. My name is Jill Gruken, and I represent the appellant, Mr. Islam. I'd like to open today with a somewhat surprising quote from Justice Scalia from the case Green v. Bach Laundry Machine, in which he states, we are confronted here with a statute which, if interpreted literally, produces an absurd and perhaps unconstitutional result, and our task is to give some alternative meaning to the statute that avoids this consequence. Similarly, we're here today to examine the absurd results of the government's interpretation and application of the laws in this case. In each of the three issues at hand, we are faced with the potential for manifest injustice, fundamental unfairness, and utter absurdity. I hope to persuade this court today that it must avoid absurd, irrational results and instead potentially use statutory interpretation and construction, or better yet, the Constitution, to arrive at a fair and just outcome. If Justice Scalia could do it, I believe this court too can do that. I see that the court, I proffer that the court has three options in this case. One would be to avoid the merits of this case altogether and find that this issue was previously decided by the immigration judge and that the government is precluded from bringing up this issue now. The second option would be to attempt to apply this ambiguous statute or possibly engage in some statutory construction to achieve a result that is not irrational and absurd. And the third option for this court, I submit, is to find that the statute at issue here is not just ambiguous, but it is unconstitutionally vague and overbroad. Can I ask you a question, please? Yes. You make one argument, it's one of several you make, but one of them is that the definition of a so-called tier three organization is unconstitutionally vague. Do you think that that provision is salvageable, in your opinion, because it could be construed in a certain way to make it understandable to the average person, or you think it, if you are right, it just needs to be struck down as unconstitutional? I believe the subsection of the TRIG statute that defines terrorist organization under the tier three category is unsalvageable. The wording just, it doesn't work. A group, you cannot define how a group can engage in these activities as a group. It is just too ambiguous, and it just leaves it open to a million different things. And it's, it encompasses activities that are protected. And it's just not, it's, we can see from the the case law, which is in precedent here, we can see all of these attempts to try to come up with something that makes sense. And courts are literally citing common sense. Well, let's use common sense. This is not acceptable. This law is being applied in cases with nearly identical facts in wildly different ways, in all different places, at the immigration officer level, in the immigration courts, before the Board of Immigration Appeals, and amongst the districts throughout the country, and the circuit courts. This really doesn't, this statute, though, that particular word of the statute does not work. I don't seek to strike down the entire TRIG statute, or even... It seems to me the biggest problem you have on this count is that it may be, perhaps this, this could be, this law could be considered vague as applied to somebody else. But, but it doesn't seem to me that it can be for your client. And, and you can't complain, your client can't complain of the vagueness of a law as applied to the conduct of others. Well, I would say to that, that there's two issues here. One is that the, the wording of the statute defining the terrorist organization as a group which participates in terrorist activities, it could be considered vague, or it could be overbroad. The overbreadth part of that argument is if it prohibits protected activities, such as being a member of a political group, or having a certain political opinion that is protected by the First Amendment. The statute is vague because there is no logical way to apply it to a set of facts, anyone's facts, including the appellant or anyone similarly situated. It is impossible to rationally and fairly define who, which groups are terrorist organizations under this Tier 3 subsection, because it's impossible to clearly delineate how a group participates in, in, in a concerted activity. And in my opinion, the other courts that have tried to do so have, have failed. Can I ask you the same question, please, about your second vagueness argument with regard to the definition of terrorist activities? Do you think that that provision is salvageable through some sort of judicial limitation or interpretation, or you think that that one is just hopelessly vague on its face and needs to be struck down to? I would say that's possibly salvageable in terms of vagueness, but in terms of overbreadth, I don't think it's salvageable, because again, it covers activities that could be protected, possibly by the Second Amendment. It covers so much behavior and activity that extends beyond any rational notion of what a terrorist act is. It encompasses too much activity. I mean, there's only maybe two words in it that I would say are overbroad. Most of the statute refers to things that we know are terrorist activities, but then provisions were added in the Patriot Act that expanded what can be considered terrorist activity, and that part is, it's too overbroad, in my opinion. Why can't the political party engage in terrorist activities as a general matter? Well, how would you define that? So the case law that's attempted to determine- A political party is a group of individuals who adhere to a certain ideology about government and government's relationship to the governed, and about how society should be ordered, and it's- Yes, I agree. I agree. We can define- I'm sorry, Your Honor. ... that purpose, and one of the ways that that group tries to achieve its goals is through murder and mayhem. Isn't that logically possible, and isn't that easy to figure out? Almost everything you said, yes, is logical and easy to figure out. I think that we can define what a political party is. I think we can define the group of people, but then how does the group engage in murder and mayhem? The other cases that have looked at it have said, well, it depends on the leaders of the group if they have authorized, for example, murder and mayhem, or it's posited by the Third Circuit and the Board of Immigration members of the group engage in those activities, then the whole group is engaging itself. I disagree that it can be defined that way. The statute does not say a group that has most of its members committing terrorist acts is a terrorist organization. It does not say a group whose leaders authorize murder and mayhem terrorist activities is a terrorist organization. That's not what it says. It says any group which participates in those activities. How do you determine if the group participates in those activities? Is it most of the members? Is it the leadership? How do you define the leadership? Who are the leaders? Let me give you what I think is an easy hypothetical, and we'll move from there. The easy hypothetical is that the party in its platform expressly and openly says, we are going to engage in murder and mayhem and pillaging in order to achieve our goals. Would that be problematic in any constitutional way? I believe that we could certainly define that group because they have explicitly stated in their platform. They probably have written documents. For example, the group in this case has a written constitution for its party. If there is some written explanation of what the group's goals are and that they are willing to use violence, terrorist acts, and furtherance of that, I'm perfectly fine personally with labeling that as a terrorist organization, but that's not what the statute says that we're dealing with here. The statute does not say a group that has in its platform explicit permission or authorization to commit terrorist acts and furtherance of its goals. I would agree that that is a way that we could try to, if we were to leave the statute as is, that is the way that I would suggest interpreting the statute and applying it fairly to this case. Okay. Ms. Gruken, you've saved five minutes for rebuttal. Ms. Mueller. Good morning, Your Honor. May it please the court, Ruthann Mueller on behalf of the United States Citizenship and Immigration Services. Your Honor, the district court correctly determined that Islam's material support for and membership in a tier three terrorist organization was not actually litigated before the immigration judge. Accordingly, USCIS's decision that the Bangladesh National Party is a tier three terrorist organization was not arbitrary and capricious because it was based on substantial evidence in the record. Islam's statute- Let me ask you a question along the same lines that I was asking Ms. Gruken, but from a different perspective. You've got a political organization and take a hypothetical for me that the political organization involves a million members, a million associated card-carrying members, right? Yes, sir. Two members of that million group political organization engage in terrorist activities. Two. Two. And they do it once. Is that political organization a terrorist group under the statute as a tier three entity? Well, Your Honor, the court would need to look at whether or not that activity was authorized by the organization. And again, the case law, as you know, the Third Circuit and the Seventh Circuit looks at whether or not there's direct authorization for that activity. And this decision is made on a case-by-case basis, looking at the organization, looking at the members, looking at the members in the organization and the platform work together. So in order to make that determination and agency making that determination, they would have to look at the record and determine whether or not authorization occurred. And the case law, UD in the Third Circuit and Hussein and Khan in the Seventh Circuit, they look at what authorization, whether it's direct or circumstantial. So again, you need to look at the party as a whole and what's in the record and how the organization is put together. Your Honor, I think that the core issue... What do you do with a protest that goes off the rails into violence? Well, Your Honor, again, you would have to have an analysis of authorization. Direct or circumstantial. From who? From who? From the organization, from the political leaders, from the platform. Well, what political leaders? The head? Any person who is an officer? Any person who is in leadership? A local chapter? What do you look at? Again, Your Honor, it would have to depend on the situation, but looking at the leadership, and in Khan and Hussein, the court looked at publicly available records of where local leadership and higher up leadership in that tier three terrorist organization had either authorized the violence or did not condemn the violence. So it goes both ways, Your Honor. So again, this is a case-by-case determination that there's not a blanket answer to whether or under that statute. I'm sorry. Go ahead, Judge Marcus. Why don't you tell us, counsel, what evidence actually was before the administrative agency on these questions? Just to clarify your question, Your Honor, on whether... The Bangladesh National Party is a tier three terrorist organization. Yeah, but the data there was bearing specifically on whether BNP was a terrorist organization as defined as a title three terrorist group. What's the evidence? In the administrative record, and this is at docket entries 18-2 and 18-4, there is publicly available sources, human rights watch reports, Department of State reports, publicly available articles, the Guardian, the Daily Mail, articles about the Bangladesh National Party either authorizing or not condemning the violence that occurred in the past 30 years. The individual in the matter today, Islam, he has been a member of the Bangladesh National Party since 1995, and the certified administrative record includes these activities. Evidence of these activities is publicly available sources since 1996. What do those sources say? They described the violence between the Bangladesh National Party... What kind of violence? What does the evidence show? Political violence using weapons. In Islam's particular circumstance, there were violent activities on the 97 in 2011 and the meeting place in the tea shop that he owned. So there's been violence between the Awami League and the Bangladesh National Party for the past 30 years. I mean, they have both... I thought the human rights watch reports, for example, showed that in 1996 elections, members of the party used cruise cocktail bombs, knives, and guns against the police, the Awami League, and other opposition parties. As recently as 2013, the State Department reports show that they had Molotov cocktails and other bomb-making materials in party offices. Have I got that right? Are there other things? You are correct. You are hitting several areas in the car. The human rights watch article that you discussed on the issue of Molotov cocktails and other violence. And there's also, again, 18-2, pages 25 through 29. There's another Department of State report from 2013 that describes similar types of political violence, in particular, violence around local elections, violence against journalists from both sides of the party. But in looking in whether or not... And everything that we're discussing here is important because it goes back to whether or not there was authorization. And in looking at the analysis in Udi in the Third Circuit, in Hussein and Khan in the Seventh Circuit, that authorization can be direct or circumstantial. And Your Honor, there's USCIS in making a determination that the Bangladesh National Party is a tier three terrorist organization. It's based off substantial evidence. That may not be... That is not conclusive evidence, but this is substantial evidence in the car that in at least 2016. Your Honor, I do want to get back to the first issue on appeal here, which is whether or not Islam's material support for membership in a tier three terrorist organization was actually litigated before the immigration judge. And it's important to note under this first prong that plaintiff's arguments, Islam's arguments all but concede that it was not actually litigated. In looking at plaintiff's objections, plaintiff argues that... May the collateral estoppel issues easy. The more interesting issues are about the vagueness of the law and the substantiality of the evidence. Yes, Your Honor. When it comes to the statutory challenges under prong three, first, no court has reviewed or challenged the statutory language of a tier three terrorist organization. No court has determined that it is broad or vague, and this court did not make that determination either. The magistrate judge's court and recommendation found that the statutory language under the SEC case that the standard of whether an individual of ordinary intelligence would be able to understand the statute. The magistrate judge was correct, and the district court judge was correct. And going to the terrorist activity statutory language, it's important to note here, and again, going back to the Third Circuit's decisions and the Seventh Circuit's decisions, they found that the terrorist activity statutory language is broad, but that's okay. Congress, in creating the statute, had the intent that there was... That it was created with the guise of foreign policy implications and national security implications and immigration implications. So it makes sense that there was a wide net cast in drafting the statute. So that deference, and there's a presumption in favor of Congress of this deference when it comes to foreign policy implications and national security implications. That is the Holder v. Humanitarian Law Project case. Your Honor, looking at duty in the Third and the Seventh Circuit cases, the courts found that the language may be broad, but that's okay because of the deference that is given to Congress in drafting the statute and in the deference given to USCIS in making that decision. And again, Your Honor, in looking at the cases that plaintiff cites, plaintiff cites that were realized in the same cases that have the same language. The statutory language, while it could be broad, and that's okay because of these foreign implications, it is not impermissibly vague. Can I ask you one other question, Ms. Mueller? The Supreme Court has generally said that with regards to vagueness, courts should use an as applied methodology unless First Amendment freedoms are involved. So how do you think we should analyze this case given that it's at least at one level clear that Mr. Islam was engaging in political activity by being a part of this organization? How do we approach the vagueness issue given the overlap between political activity and membership in a political group which has at least some First Amendment overtones? Well, Your Honor, the other cases that we're discussing did not have a First Amendment analysis. We are discussing a tier three terrorist organization that is a foreign organization. So I think it's important to keep in mind the analysis of the other courts and that sort of that analysis has not been briefed between the parties here today, Your Honor. So I do think that's why I'm trying to get some help from you on it. Well, in response to that, Your Honor, as applied here, Your Honor, this is a foreign organization. The statutory construction keeps in mind the foreign organizations and tier three terrorist organizations and individuals who are coming into this country under the immigration statutes. So like the other courts, this analysis was not necessary under the case law and under the statute. And that analysis did not need to occur for the district court judge and a magistrate court judge. And Your Honor could work with the Third Circuit and Seventh Circuit cases as this case is being reviewed de novo under the summary judgment decision on an APA claim. Help me with this, counsel, if you would. Assume for the purposes of my question that there's sufficient evidence to sustain the determination by the agency that the BNP is a tier three terrorist organization. And assume further for the purpose of my question, just assume it, that Islam was a member of the BNP for an extended period of time, allowed meetings to be conducted in his shop, served in the role of publicity director. Is that enough? Or do you have to have some palpable evidence that he knew that the organization to which he lent his support was in fact a terrorist organization? What knowledge does he have to have under the statute? And what evidence is there going to those questions? Yes, Your Honor. First point on Your Honor's question is that it's the government's position that the lack of knowledge exception that you're alluding to, Your Honor, it's in the statutory scheme. It was not preserved on appeal. The parties did not brief the lack of knowledge exception on a district court. And the magistrate judge did not determine that. But more to the merits of your question, Your Honor, I refer the courts to how the court was how the individuals in the Seventh Circuit, in particular, the Seventh Circuit, how they may still have been able to provide material support, but may not have known that they were providing material support to a terrorist organization. So the Seventh Circuit's decisions here are very telling in that you may be providing material support to an organization, and it may not be peaceful. And the Seventh Circuit's decisions are very clear that many of these tier three terrorist organizations operate on two tracks, one being peaceful and one being a terrorist organization. An example that the Seventh Circuit used that if you're providing resources, fully resources into what everyone would consider a peaceful activity, that peaceful track, you are freeing up, you are freeing up resources for that terrorist track. So when it comes to the Bangladesh National Party, it's very similar to the same material support that was provided in Khan. I may lend my home or my business to an organization for the purpose of a meeting, or for regular meetings. But in and of itself, that doesn't establish, does it, the requisite knowledge on my part that the organization is a terrorist organization, unless at the meetings, there's some indicia of terrorism, disgust, or terrorist methods, or bomb making, or violence. In the absence of that, what do I have here that would establish knowledge on his part? I understand your position that basically, this really wasn't an issue litigated in the administrative court. But what do you have on that here? Yes, Your Honor, and I realize I'm out of time, so I'll be brief. So in this particular case, in Islam's particular case, he did hold meetings in his tea shop. He put up flyers, he recruited, he was the publicity secretary. This is very similar to the Khan, where it was a very similar type of material support. And that's enough here, Your Honor, that is enough to meet the fact that he was providing material support to a terrorist organization, and understanding where... The problem with that is, to what extent that this is an actual issue in the case, that may be debatable, but I don't understand how his engaging in those activities establishes his knowledge that the party engages in other activities that are terrorist in nature. Well, Your Honor, I think it's very telling that if you look at the asylum application, and the exhibits of the asylum application, many exhibits that are attached, and this is there are many exhibits of support from higher up members of the organization. President of the Bangladesh National Party, high up members, and Islam as a publicity... So, what you're saying is that there's substantial evidence that this organization's activities were so open and notorious that anyone affiliated with it would have known of it? Yes, Your Honor, and that gets to the Seventh Circuit's point that an individual who may be part of an organization and may not know, but part of a smaller organization, but here we have a country that has, as you say, open and notorious on political violence between both parties, that he would be aware of that. I think we understand your argument, Ms. Mueller. Ms. Gruca, you say five minutes for rebuttal. Thank you, Your Honor. Since Your Honor seemed interested in the constitutional aspects of this case, I can go back to that and discuss what you were asking the government attorney, which is how does the First Amendment play into the vagueness argument? Here's the problem I'm having. Did I recite the evidence correctly earlier? It does seem to me that there are plenty of reports in the administrative record that this organization engaged in bomb-making and violence against police, against journalists. I respectfully disagree with that characterization of the evidence. Tell me how I'm wrong. Sure. There is much evidence in the record that political violence occurs in Bangladesh, it is a regular occurrence in their society. That's the central question for me. Just because individual people are skirmishing in the streets, we're not talking about jihad-type terrorism. We're talking about two democratic, normal political parties that are fighting for power, and they have skirmishes constantly. That does not mean that the party as a whole, as a group, that they authorize those activities. The leaders have never, ever—there's no evidence in the file whatsoever that the leaders of the party have ever authorized, in any way, any of those activities. In fact, I submitted evidence that the leader Khalida Zia wanted to combat terrorism. She's hunted down Islamic terrorists and executed them. There's substantial— Let me ask a question, counsel, this way. If the evidence arguably shows that a political organization has been involved in repeated acts of violence over an extended period of time, is that enough to infer the notoriety of the organization's behavior itself, to put someone on notice? No. There's no precedent case to guide us in that question. We can look to the Third Circuit decision of Uddin, but the question is the authorization, once again. You would have to take that general notoriety of lots of these political members are skirmishing or doing— You describe that as skirmishing, but except for the purpose of my question, and then we can debate the detail, but except for the purpose of my question, that a political organization, over an extended period of time, at least a decade, has been repeatedly involved in notorious acts of violence, bombings, using of firearms, etc., against opponents, for political ends, even though, at the same time, it's involved in the of violence over an extended period of time. Would that not be enough to sustain what they did here? Maybe the answer is no, but just help me with that. Yeah. Well, my problem with the premise, as you've stated it, is that you are stating the political party has engaged in these bombings and having firearms and things like that. How did the engage in bombings? The party is just an association of members. In this kind of context, the question is going to be, did members engage in this kind of activity notoriously for decades? We have to look at this evidence in the light most favorable to government, it seems to me. If the premise is that many members of the political party have engaged in bombings, etc., you can apply the suggested analysis in the dicta of the Third Circuit case, which says if most of a political party's members engage in those kinds of activities, then it meets the definition of a tier three terrorist group. But that is not what the statute says as is. You are constructing a statute in that case to take it to mean that. Judge Marcus, do you have any other questions? Judge Jordan, do you have any? No, thank you. Ms. Grugan, I think we understand your case, and thank you very much. We'll move on to the next one this morning.